[Cite as *Ciszewski v. Kolaczewski*, 2013-Ohio-1765.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

JENNIFER CISZEWSKI, et al.

    Appellants

    v.

GAYLEEN KOLACZEWSKI, et al.

    Appellee

C.A. No.     26508

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2010-12-8123

DECISION AND JOURNAL ENTRY

Dated: May 1, 2013

---

WHITMORE, Judge.

{¶1} Plaintiff-Appellants, Jennifer and Michael Ciszewski, appeal from the judgment of the Summit County Court of Common Pleas, granting Defendant-Appellee, Gayleen Kolaczewski's, motion for summary judgment. This Court affirms.

I

{¶2} Emilia and Mitchell Kolaczewski had three daughters, Christine Kolaczewski-Ferris, Kathleen Ciszewski, and Gayleen Kolaczewski. Appellants are the children of Kathleen Ciszewski and the grandchildren of Emilia and Mitchell. Emilia passed away in 2008; Mitchell had preceded her in 2004. Gayleen served as the executrix of Emilia's estate. In 2008, Kathleen and Christine filed an action contesting Emilia's will. A confidential settlement was reached among the sisters in 2009.

{¶3} In early 2010, Gayleen sent an electronic message to Michael Ciszewski, Kathleen's son, informing him that he and his sister, Jennifer, were offered money from Emilia's

estate on the condition that they meet with her and hear her read Emilia's diary. No such meeting took place. In December 2010, Appellants filed a complaint alleging (1) Gayleen intentionally interfered with their expected inheritance; (2) Gayleen converted assets for her own use that were intended for Appellants; and (3) a constructive trust had been established.

{¶4} Gayleen filed a third party complaint against Kathleen seeking indemnity and contribution based on the 2009 confidential settlement agreement. Kathleen then filed a counterclaim against Gayleen, arguing breach of contract based on the same settlement agreement.

{¶5} In May 2012, the court granted summary judgment in favor of Gayleen and sua sponte dismissed her third party complaint against Kathleen. Subsequently, Kathleen voluntarily dismissed her counterclaim. Appellants now appeal and raise two assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT INCORRECTLY GRANTED DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON ALL FOUR COUNTS OF PLAINTIFFS'
COMPLAINT.

{¶6} In their first assignment of error, Appellants argue the court erred in granting summary judgment to Gayleen. We disagree.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). To prevail on a motion for summary judgment, the moving party must show:

> (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is satisfied, the burden shifts to the non-moving party to offer specific facts to show a genuine issue for trial. *Id.* at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Brannon v. Executive Properties, Inc.*, 9th Dist. No. 26298, 2012-Ohio-5483, ¶ 6; Civ.R. 56(E).

Confidential, Fiduciary Relationship

{¶9} Appellants argue that the court erred in not finding a confidential, fiduciary relationship between Gayleen and Emilia, thereby shifting to Gayleen the burden of proving there was no undue influence.

{¶10} "The determination concerning what constitutes a confidential (fiduciary) relationship is a question of fact dependent upon the circumstances in each case: A confidential relationship is one in which one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic or merely personal." (Internal quotations and citations omitted.) *Indermill v. United Sav.*, 5 Ohio App.3d 243, 245 (9th Dist.1982). "[A] parent-child relationship, without more, is insufficient to create a fiduciary relationship." *In re Estate of Workman*, 4th Dist. No. 07CA39, 2008-Ohio-3351, ¶ 20, citing *McAdams v. McAdams*, 80 Ohio St. 232, 243-244 (1909). A fiduciary relationship is "a relationship 'in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by

virtue of this special trust.'" *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 442 (1996), quoting *In re Termination of Employment of Pratt*, 40 Ohio St.2d 107, 115 (1974).

{¶11} Where a confidential relationship exists between the donor and the donee, a presumption of undue influence arises. *Modie v. Andrews*, 9th Dist. No. 19543, 2000 WL 1026682, *4 (July 26, 2000). The donee must then show, by a preponderance of the evidence, that the gift was free from undue influence. *Id.*

{¶12} Appellants argue that a confidential, fiduciary relationship existed between Gayleen and Emilia because: (1) Emilia depended on Gayleen "for the management of her daily affairs such as transportation, meals, caregiving and financial management"; (2) Gayleen was Emilia's "primary care physician * * * yet * * * kept no records or notes of [Emilia's] treatment"; (3) Emilia suffered from "physical injuries causing her to become periodically bed-ridden"; (4) Gayleen visited Emilia every day, shared most meals with her, and was Emilia's only source of companionship; and (5) Emilia trusted Gayleen implicitly.

{¶13} Appellants' argument is not entirely supported by the record. Gayleen did visit Emilia daily and the two shared most meals together. However, Appellants have offered no evidence that Emilia relied on Gayleen to provide those meals. Gayleen testified that Emilia did primarily rely on her for transportation, and trusted her implicitly; however, Gayleen also testified that Emilia "had lots of other friends" and denied that she was Emilia's only source of companionship. Gayleen testified that she was not the primary care physician for either of her parents and only treated her mother for minor health problems, like colds and rashes. Gayleen testified that Emilia was never bedridden. Gayleen further testified that Emilia handled her own finances, settled Mitchell's estate when he passed, and created her own estate plan. Gayleen said

she did not help her mother pay the bills, although she would have if Emilia had ever asked for help.

{¶14} While there is evidence that the two were very close, there is no evidence that Gayleen's relationship with Emilia was one of superiority or influence. *See Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-4945, ¶ 32 (8th Dist.). We conclude based upon the record before us that no confidential, fiduciary relationship existed and the burden of proving undue influence properly remained with Appellants.

Intentional Interference with Expectancy of Inheritance

{¶15} Appellants argue the court erred in granting summary judgment against them on their claim of intentional interference with expectancy of inheritance. We disagree.

{¶16} To prove a claim of intentional interference with expectancy of inheritance, the plaintiff must show:

> (1) an existence of an expectancy of inheritance in the plaintiff;
>
> (2) an intentional interference by a defendant(s) with that expectancy of inheritance;
>
> (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature;
>
> (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and
>
> (5) damage resulting from the interference.

*Firestone v. Galbreath*, 67 Ohio St.3d 87, 88 (1993).

{¶17} Appellants rely on their argument that Gayleen and Emilia had a confidential, fiduciary relationship. Therefore, according to Appellants, there is a presumption that Gayleen tortiously interfered with their inheritance. However, as we have concluded that no fiduciary relationship existed Appellants are required to establish all of the elements of undue influence.

"[N]amely, that the decedent was susceptible to influence, that there was an opportunity to exert undue influence on the decedent, that improper influence was actually exerted or attempted, and that the resulting transaction showed the effects of such influence." *Chapin v. Nameth*, 7th Dist. No. 08 MA 18, 2009-Ohio-1025, ¶ 32, citing *Redman v. Watch Tower Bible & Tract Soc. of Pennsylvania*, 69 Ohio St.3d 98, 101 (1994).

**{¶18}** Even viewing the record in a light most favorable to Appellants, there is no evidence to show that Emilia was susceptible to undue influence. Emilia maintained her own finances, including planning her own estate. There is no evidence that Emilia was isolated from other people or that Gayleen was her sole source of companionship. The evidence presented merely shows that Emilia and Gayleen had a close relationship.

**{¶19}** Moreover, there is no evidence to suggest that an improper influence was actually exerted or attempted, or that the resulting transaction showed the effects of such influence. Despite some testimony that two certificate of deposit accounts were established shortly after Michael's birth, one of which matured during Michael's college years, the accounts were never in the names of Appellants. According to Gayleen, the accounts were established by Mitchell and Emilia to benefit Appellants on the condition that they established some sort of relationship with them. Appellants have presented no evidence to contradict this. Emilia had recently handled the settling of Mitchell's estate and was familiar with how the accounts were set up. Gayleen did not help Emilia in managing her financial affairs.

**{¶20}** Even assuming there is a genuine issue of material fact with respect to the existence of an expectancy of inheritance, Appellants have not presented any evidence that Gayleen tortiously interfered with such inheritance. Accordingly, the court did not err in

granting Gayleen's motion for summary judgment on the claim of intentional interference with expectancy of inheritance.

Conversion

{¶21} "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Perez Bar & Grill v. Schneider*, 9th Dist. No. 11CA010076, 2012-Ohio-5820, ¶ 10, quoting *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 592 (2001). To prove a claim of conversion, the plaintiff must show:

(1) plaintiff's ownership or right to possession of the property at the time of the conversion;

(2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and

(3) damages.

(Internal quotations omitted.) *Perez Bar & Grill* at ¶ 10.

{¶22} Appellants argue that Gayleen "cannot support her assertion that the funds were placed in her possession so that she may divide them at her discretion." Appellants rely on the presumption of undue influence because of a confidential, fiduciary relationship, the timing of the accounts, and Emilia and Mitchell's emphasis on education.

{¶23} Gayleen testified that she did not help manage Emilia's finances. According to Gayleen, Emilia handled her own finances, established her own estate plan, and did not include Appellants in her will. Emilia also settled Mitchell's estate in 2004 when he passed; therefore, she would have had knowledge of the various deposit accounts in existence and how they were set up. Appellants have offered no evidence to contradict this testimony. As we have concluded

above, there was no fiduciary relationship between Emilia and Gayleen and Appellants are not entitled to the presumption of undue influence.

**{¶24}** Appellants argue that the timing of the deposit account creates a genuine issue of material fact. Specifically, Appellants argue that accounts were established around the time they were born and matured about the time they were going to college. This, according to Appellants, in combination with the letters from Emilia and Mitchell emphasizing the importance of education, shows that the funds were intended to be dispersed to them without any additional conditions imposed by Gayleen. Gayleen admits that Emilia and Mitchell established an account for the benefit of Appellants. However, Gayleen asserts that distribution of the funds was always conditioned on Appellants establishing a certain type of relationship with their grandparents. Appellants have provided no evidence to contradict this.

**{¶25}** After viewing the evidence in a light most favorable to Appellants, we conclude Appellants have not offered evidence to support a finding that they had an ownership or right to possession of the funds. Accordingly, the court did not err in granting Gayleen's motion for summary judgment on the claim of conversion.

Constructive Trust

> A constructive trust is a trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

(Internal quotations omitted.) *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, ¶ 18. The plaintiff bears the burden of establishing, by clear and convincing evidence, that a constructive trust should be placed over a particular asset. *Id*. at ¶ 23-24.

**{¶26}** Appellants argue that a constructive trust is appropriate because Gayleen admitted to "holding funds that were entrusted to her (as a result of undue influence) for over two years and then deciding that she had the discretion to distribute them as she wished."

**{¶27}** As we have concluded above, there is no evidence to support the conclusion that Emilia intended Appellants to inherit the funds. It is undisputed that funds were set aside for the benefit of Appellants; however, Gayleen testified that Appellants were only entitled to the funds on the condition that they establish a relationship with Emilia and Mitchell. There is no evidence to contradict this condition precedent. Again, Emilia managed her own finances. She created her own estate plan in which she did not include Appellants. Emilia settled Mitchell's estate and would therefore have been familiar with the deposit accounts. As discussed above, there is no evidence of undue influence.

**{¶28}** After viewing the evidence in a light most favorable to Appellants, we conclude the court did not err in granting Gayleen's motion for summary judgment on the claim of a constructive trust.

**{¶29}** Appellants' first assignment of error is overruled.

Assignment of Error Number Two

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO
STRIKE IMPROPER OHIO CIV.R. 56 EVIDENCE FROM THE RECORD[.]

**{¶30}** In their second assignment of error, Appellants argue that the court improperly considered documents attached to Gayleen's motion for summary judgment because the documents were not submitted in compliance with Civ.R. 56.

**{¶31}** This Court reviews an award of summary judgment de novo. *Grafton*, 77 Ohio St.3d at 105. To prevail on a motion for summary judgment, the moving party must show:

(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.

*Temple*, 50 Ohio St.2d at 327.

{¶32} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher*, 75 Ohio St.3d at 292-293. To support a motion for summary judgment the court may consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any * * *." Civ.R. 56(C). Additional documentation may be submitted if it is properly incorporated into an affidavit. Civ.R. 56(E). "No evidence or stipulation may be considered except as stated in [Civ.R. 56]." Civ.R. 56(C).

{¶33} Gayleen attached five exhibits to her motion for summary judgment. Four of the exhibits contained handwritten letters, two allegedly written by Kathleen and two allegedly written by Emilia. Appellants moved to strike these exhibits because they did not comply with Civ.R. 56. Without ruling on Appellants' motion to strike, the court granted Gayleen's motion for summary judgment. Appellants now argue that the court "incorrectly and heavily relied" on the improperly submitted exhibits.

{¶34} This Court will not reverse a judgment based on an error that does not affect the substantial rights of the parties.

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Civ.R. 61.

{¶35} Even assuming the court erred in considering the exhibits, we conclude the error is harmless. In the first assignment of error, we concluded that summary judgment was appropriate without reference to the unauthenticated documents. Because summary judgment was proper, any error by the court in considering the unauthenticated documents is harmless. Appellants' second assignment of error is overruled.

### III

{¶36} Appellants' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ADAM M. FRIED and ADRIANN S. MCGEE, Attorneys at Law, for Appellants.

MICHAEL CICCOLINI, and JOHN LYSENKO, Attorneys at Law, for Appellee.